JaVonne M. Phillips, Esq. SBN 187474
Merdaud Jafarnia, Esq., SBN 217262
**McCarthy & Holthus, LLP**
1770 Fourth Avenue
San Diego, CA 92101
Phone (619) 685-4800 Ext. 1521
Fax (619) 685-4810
mjafarnia@mccarthyholthus.com

Attorney for: Secured Creditor,
Wells Fargo Bank, N.A.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>Robert Alexi Rojas,<br><br>        Debtor. | ) Case No. 13-45382 WJL<br>)<br>) Chapter 13<br>)<br>) RS No. MJ-10762<br>)<br>) **EXHIBITS TO MOTION FOR RELIEF**<br>) **FROM AUTOMATIC STAY**<br>)<br>) Date: 09/13/2017<br>) Time: 09:30AM<br>) Ctrm: 220<br>) Place: 1300 Clay Street<br>)            Oakland, CA<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

*///*

*///*

*///*

Case: 13-45382    Doc# 29-3    Filed: 08/17/17    Entered: 08/17/17 15:34:42    Page 1 of 30

Recording Requested By:
PLATINUM HOME MORTGAGE
CORPORATION

And After Recording Return To:
PLATINUM HOME MORTGAGE CORPORATION
2200 HICKS ROAD, SUITE 101
ROLLING MEADOWS, ILLINOIS 60008
Loan Number:

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
**DOC- 2008-0190846-00**
Acct 9- North American Title
Wednesday, AUG 27, 2008 08:00:00
MOD $11.00:REC $15.00:FTC $10.00
DA: $1.80:REF $0.20:RED $1.00
T11 Pd $39.00 Nbr-0004187092
mom/R2/1-11

------- [Space Above This Line For Recording Data] -------

# DEED OF TRUST

FHA CASE NO.

**MIN:**

THIS DEED OF TRUST ("Security Instrument") is made on AUGUST 6, 2008
The trustor is ROBERT A. ROJAS AND CELIA ROJAS, HUSBAND AND WIFE AS
JOINT TENANTS

("Borrower").

The trustee is NORTH AMERICAN TITLE COMPANY

("Trustee").

The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
PLATINUM HOME MORTGAGE CORPORATION, AN ILLINOIS CORPORATION

("Lender")

is organized and existing under the laws of ILLINOIS
and has an address of 2200 HICKS ROAD, SUITE 101, ROLLING MEADOWS,
ILLINOIS 60008
Borrower owes Lender the principal sum of ONE HUNDRED EIGHTY-SIX THOUSAND
FORTY-NINE AND 00/100 Dollars (U.S. $ 186,049.00 ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on SEPTEMBER 1, 2038 .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in CONTRA COSTA County, California:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.:

Case: 13-45382 Doc# 29-3 Filed: 08/17/17 Entered: 08/17/17 15:34:42 Page 2 of 30

EXHIBIT 1

Cadotz.fha.xml

which has the address of 475 CHRISTINE DRIVE

[Street]

SAN PABLO , California 94806 ("Property Address"):

[City] [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time

FHA CALIFORNIA DEED OF TRUST - MERS
6/96

Page 2 of 9

DocMagic *eForms* 800-649-1362
www.docmagic.com

Cadotz.fha.xml

Case: 13-45382    Doc# 29-3    Filed: 08/17/17    Entered: 08/17/17 15:34:42    Page 3 of
30

are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

    **(a) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

        (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

    **(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

    **(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not

Cadotz.fha.xml

Case: 13-45382    Doc# 29-3    Filed: 08/17/17    Entered: 08/17/17 15:34:42    Page 5 of 30

paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 DAYS from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 DAYS from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply

DocMagic *eForms* 800-649-1362
www.docmagic.com

Cadotz.fha.xml

to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single

DocMagic *eForms* 800-649-1362
www.docmagic.com

Cadotz.fha.xml

Case: 13-45382    Doc# 29-3    Filed: 08/17/17    Entered: 08/17/17 15:34:42    Page 7 of 30

Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

**19. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under applicable law.

**20. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**21. Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

**22. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Graduated Payment Rider | ☐ Growing Equity Rider |
| ☐ Planned Unit Development Rider | ☐ Adjustable Rate Rider | ☐ Rehabilitation Loan Rider |
| ☐ Non-Owner Occupancy Rider | ☐ Other [Specify] | |

FHA CALIFORNIA DEED OF TRUST - MERS
6/96
Page 7 of 9

DocMagic *eForms* 800-649-1362
www.docmagic.com

Cadotz.fha.xml

Case: 13-45382   Doc# 29-3   Filed: 08/17/17   Entered: 08/17/17 15:34:42   Page 8 of 30

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to the Borrower at the address set forth above. A copy of any Notice of Default and any Notice of Sale will be sent only to the address contained in this recorded request. If the Borrower's address changes, a new request must be recorded.

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 9 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
ROBERT A. ROJAS                    -Borrower

_____ (Seal)
CELIA ROJAS                        -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

Witness:                           Witness:

_____    _____

Cadotz.fha.xml

Case: 13-45382    Doc# 29-3    Filed: 08/17/17    Entered: 08/17/17 15:34:42    Page 9 of 30

State of California )
County of *Contra Costa* ) ss.

On *08-09-08* before me, *Kristen Boyd notary public*

personally appeared ROBERT A. ROJAS AND CELIA ROJAS

_____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

KRISTEN BOYD
Commission # 1796008
Notary Public - California
Contra Costa County
My Comm. Expires Apr 20, 2012

NOTARY SEAL

_____
NOTARY SIGNATURE

*Kristen Boyd*
_____
(Typed Name of Notary)

Cadotz.fha.xml

Case: 13-45382   Doc# 29-3   Filed: 08/17/17   Entered: 08/17/17 15:34:42   Page 10 of 30

## LEGAL DESCRIPTION

Real property in the unincorporated area of the County of Contra Costa, State of California, described as follows:

ALL THAT PORTION OF LOT 67, LYING SOUTHEASTERLY OF A LINE DRAWN PARALLEL TO AND 5 FEET NORTHWESTERLY, MEASURED AT RIGHT ANGLES, FROM THE SOUTHEAST LINE THEREOF AND ALL OF THAT PORTION OF LOT 68, LYING NORTHEASTERLY OF A LINE DRAWN PARALLEL TO AND 3 FEET NORTHWESTERLY MEASURED AT RIGHT ANGLES FROM THE SOUTHEAST LINE THEREOF, AS SAID LOTS ARE SHOWN ON THE MAP OF MONTALVIN MANOR UNIT NO. 1, FILED SEPTEMBER 5, 1952, IN MAP BOOK 48, AT PAGE 7, OF CONTRA COSTA COUNTY OFFICIAL RECORDS.

APN: ▮▮▮▮▮▮▮▮

Loan Number: ▓▓▓▓▓▓

Date: AUGUST 6, 2008

Property Address: 475 CHRISTINE DRIVE, SAN PABLO, CALIFORNIA 94806

## EXHIBIT "A"

## LEGAL DESCRIPTION

END OF DOCUMENT

A.P.N. # : ▓▓▓▓▓▓▓▓

*DocMagic* €Forms 800-649-1362
www.docmagic.com

Cadotz.fha.xml

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.
MAC: X9999-018
PO BOX 1629
MINNEAPOLIS, MN 55440-9790

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2011-0167628-00
Check Number
Wednesday, AUG 17, 2011 11:44:07
MOD      $2.00:REC     $12.00:FTC      $1.00
DAF      $2.70:REF     $0.30:RED       $1.00
ERD      $1.00:
Ttl Pd   $20.00        Rcpt # 0001000153
                       mom/R3/1-2

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Contra Costa, California
SELLER'S SERVICING ██████ "ROJAS"

MERS #: ██████████  SIS #: 1-888-679-6377

Prepared By: Rosee Yang, WELLS FARGO BANK, N.A. 1000 BLUE GENTIAN RD., EAGAN, MN 55121 (651)605-3792

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR PLATINUM HOME MORTGAGE CORPORATION, AN ILLINOIS CORPORATION, ITS SUCCESSORS AND ASSIGNS hereby grants, assigns and tranfers to WELLS FARGO BANK, N.A., SUCCESSOR BY MERGER TO WACHOVIA BANK, N.A., ITS SUCCESSORS AND ASSIGNS at 1 HOME CAMPUS, DES MOINES, IA 50328 all beneficial interest under that certain Deed of Trust dated 08/06/2008 , in the amount of $186,049.00, executed by ROBERT A. ROJAS AND CELIA ROJAS, HUSBAND AND WIFE AS JOINT TENANTS to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR PLATINUM HOME MORTGAGE CORPORATION, AN ILLINOIS CORPORATION, ITS SUCCESSORS AND ASSIGNS and Recorded: 08/27/2008 as Instrument No.: 2008-0190846-00 in the County of Contra Costa, State of California.

Therein described or referred to, in said Deed of Trust, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

In witness whereof this instrument is executed.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR PLATINUM HOME MORTGAGE CORPORATION, AN ILLINOIS CORPORATION, ITS SUCCESSORS AND ASSIGNS
On ___8/15/11___

_____, Assistant
YEN NGUYEN
Secretary

STATE OF Minnesota
COUNTY OF Dakota

On __8/15/11__, before me, _Julie Ann Prieto_, a Notary Public in and for Dakota in the State of Minnesota, personally appeared _Yen Nguyen_, Assistant Secretary, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

Notary Expires: 1/31/2014



JULIE ANN PRIETO
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2014

(This area for notarial seal)

# EXHIBIT "A"

Real property in the unincorporated area of the County of Contra Costa, State of California, described as follows:

ALL THAT PORTION OF LOT 67, LYING SOUTHEASTERLY OF A LINE DRAWN PARALLEL TO AND 5 FEET NORTHWESTERLY, MEASURED AT RIGHT ANGLES, FROM THE SOUTHEAST LINE THEREOF AND ALL OF THAT PORTION OF LOT 68, LYING NORTHEASTERLY OF A LINE DRAWN PARALLEL TO AND 3 FEET NORTHWESTERLY MEASURED AT RIGHT ANGLES FROM THE SOUTHEAST LINE THEREOF, AS SAID LOTS ARE SHOWN ON THE MAP OF MONTALVIN MANOR UNIT NO. 1, FILED SEPTEMBER 5, 1952, IN MAP BOOK 48, AT PAGE 7, OF CONTRA COSTA COUNTY OFFICIAL RECORDS.

APN: ███████████

## END OF DOCUMENT

| FHA CASE NO. |
|---|
| ███████████ |

AUGUST 6, 2008     ROLLING MEADOWS     ILLINOIS
[Date]             [City]             [State]

475 CHRISTINE DRIVE, SAN PABLO, CALIFORNIA 94806
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means PLATINUM HOME MORTGAGE CORPORATION, AN ILLINOIS CORPORATION     and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of ONE HUNDRED EIGHTY-SIX THOUSAND FORTY-NINE AND 00/100 Dollars (U.S.$ 186,049.00 ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of SIX AND 375/1000 percent ( 6.375 %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

(A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on OCTOBER 1, 2008 . Any principal and interest remaining on the first day of SEPTEMBER, 2038 , will be due on that date, which is called the "Maturity Date."

(B) Place

Payment shall be made at 2200 HICKS ROAD, SUITE 101, ROLLING MEADOWS, ILLINOIS 60008

or at such other place as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $ 1,160.70 . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for Payment Adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. (Check applicable box.)

☐ Growing Equity Allonge         ☐ Graduated Payment Allonge
☐ Other [specify]

CALIFORNIA - FHA FIXED RATE NOTE
CAFHA.NTE 05/01/08        Page 1 of 4        DocMagic *EFORMS* 800-649-1362
www.docmagic.com

Case: 13-45382   Doc# 29-3   Filed: 08/17/17   Entered: 08/17/17 15:34:42   Page 15 of 30

EXHIBIT 3

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. if Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000 percent ( 4.000 %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. GROUNDS FOR ACCELERATION OF DEBT

### (A) Default

Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by the Security Instrument and due under this Note if:

(i)    Borrower defaults by failing to pay in full any monthly payment required by this Note and the Security Instrument prior to or on the due date of the next monthly payment, or

(ii)   Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in the Security Instrument securing this Note.

### (B) Sale Without Credit Approval

Lender shall, if permitted by applicable law (including section 341 (d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j - 3(d)) and with the prior approval of the Secretary, require immediate payment in full of all the sums due under this Note and secured by the Security Instrument if:

(i)    All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii)   The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

### (C) No Waiver

If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

### (D) Regulations of HUD Secretary

In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Note and the Security Instrument do not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

Case: 13-45382     Doc# 29-3     Filed: 08/17/17     Entered: 08/17/17 15:34:42     Page 16 of 30

**(E) Mortgage Not Insured**

Borrower agrees that if the Security Instrument and this Note are not determined to be eligible for insurance under the National Housing Act within 60 DAYS from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by the Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 DAYS from the date hereof, declining to insure the Security Instrument and this Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

## 8. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

Case: 13-45382    Doc# 29-3    Filed: 08/17/17    Entered: 08/17/17 15:34:42    Page 17 of 30

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 4 of this Note.

_____ (Seal)
ROBERT A. ROJAS                    -Borrower

_____ (Seal)
CELIA ROJAS                        -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

WITHOUT RECOURSE PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

THIS 27TH DAY OF AUGUST 2008

PLATINUM HOME MORTGAGE CORPORATION

_____
SHARON GRADY, AVP CLOSING OPERATIONS

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

By _____
Scott M. Swanson
Assistant Vice President

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

BY _____
SAMUEL C. SHELLEY, SENIOR VICE PRESIDENT
0007

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

BY _____
DAVID C. PETERSON, SENIOR VICE PRESIDENT
065

[Sign Original Only]

CALIFORNIA - FHA FIXED RATE NOTE
CAFHA.NTE 05/01/08

Page 4 of 4

DocMagic *eForms* 800-649-1362
www.docmagic.com

**WELLS FARGO** | **HOME MORTGAGE**

## LOAN MODIFICATION AGREEMENT
## LOAN NUMBER: █████████████

THIS LOAN MODIFICATION AGREEMENT ("Agreement"), made on January 20, 2010, by and between Robert A Rojas and Celia Rojas (the "Borrower(s)") and Wells Fargo Bank, N A (the "Lender", together with the Borrower(s), the "Parties").

### WITNESSETH

WHEREAS, Borrower has requested and Lender has agreed, subject to the following terms and conditions, to a loan modification as follows:

NOW THEREFORE, in consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, it is agreed as follows (notwithstanding anything to the contrary in the Note and Security Instrument dated 08/06/2008.)

1. BALANCE. As of January 20, 2010, the amount payable under the Note and Security Instrument (the "Unpaid Principal Balance") is U.S. $ 183,919.71.
2. EXTENSION. This Agreement hereby modifies the following terms of the Note and Security Instrument described herein above as follows:

A. The current contractual due date has been extended from 10-01-09 to 03/01/2010. The first modified contractual due date is on 03/01/2010.
B. The maturity date has been extended from 09-38 (month/year) to 02/01/2040.
C. The amount of interest to be included (capitalized) will be U.S. $ 4,885.35.
The amount of the Escrow Advance to be capitalized will be U.S. $4,032.18.
The amount of Recoverable Expenses* to be capitalized will be U.S. $0.00.
The modified Unpaid Principal Balance is U.S. $ 191,528.86.
* Recoverable Expenses may include, but are not limited to: Title, Attorney fees/costs, BPO/Appraisal, and/or Property Preservation/Property Inspections

D. The Borrower(s) promises to pay the Unpaid Principal Balance plus interest, to the order of the Lender. Interest will be charged on the Unpaid Principal Balance of U.S. $ 191,528.86. The Borrower(s) promises to make monthly payments of principal and interest of U.S. $ 1,042.85, at a yearly rate of 5.125%, not including any escrow deposit, if applicable. If on the maturity date the Borrower(s) still owes an amount under the Note and Security Instrument, as amended by this Agreement, Borrower(s) will pay this amount in full on the maturity date.
* (If applicable, all scheduled step rate changes according to your Note and Security Instrument will remain unchanged.)     LM521/OFZ/1

Wells Fargo Home Mortgage
is a division of Wells Fargo Bank, N.A.

EXHIBIT 4


3.   NOTE AND SECURITY INSTRUMENT. Nothing in this Agreement shall be understood or construed to be a satisfaction or release, in whole or in part of the Borrower's obligations under the Note or Security Instrument. Further, except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and shall comply with, all of the terms and provisions thereof, as amended by this Agreement.

4.   The undersigned Borrower(s) acknowledge receipt and acceptance of the Loan Modification Settlement Statement. Borrower(s) agree with the information disclosed in and understand that I/we am/are responsible for payment of any outstanding balances outlined in the Loan Modification Settlement.

5.   The undersigned Borrower(s) acknowledge receipt and acceptance of the Borrower Acknowledgements, Agreements, and Disclosures Document (BAAD).

6.   If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Truth in Lending statement.

7.   If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Special Flood Hazard Area (SFHA).

8.   That (he/she/they) (is/are) the Borrower(s) on the above-referenced Mortgage Loan serviced by Wells Fargo Bank, N A.

That (he/she/they) have experienced a financial hardship or change in financial circumstances since the origination of (his/her/their) Mortgage Loan.

That (he/she/they) did not intentionally or purposefully default on the Mortgage Loan in order to obtain a loan modification.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as the date first above written.

By signing this Agreement I hereby consent to being contacted concerning this loan at any cellular or mobile telephone number I may have. This includes text messages and telephone calls including the use of automated dialing systems to contact my cellular or mobile telephone. You will not be billed by your cellular or mobile carrier for any text messages you may receive from Wells Fargo, however any calls we place to your cellular or mobile phone will incur normal airtime charges assessed by your mobile carrier.

Dated as of this __25__ day of __January__ , 20 _10_ .

_____          _____
Celia Rojas                       Robert A Rojas

_Celia Rojas_                     _Robert A. Rojas_

_____          _01/29/10_
Wells Fargo Bank, N A, Officer/ Date

Halimo Y. Adem
VP of Loan Documentation

LM521/OFZ/2

Wells Fargo Home Mortgage
is a division of Wells Fargo Bank, N.A.



## LOAN MODIFICATION AGREEMENT
LOAN NUMBER: ██████████
PROPERTY ADDRESS 475 Christine Drive
San Pablo CA 94806
MIN: ████████████   MERS Phone: 1-888-679-6377

THIS LOAN MODIFICATION AGREEMENT ("Agreement"), made on
February 16, 2011, by and between Robert A Rojas and
Celia Rojas and (the "Borrower(s)") and
Wells Fargo Bank, N A (the "Lender",
And Mortgage Electronic Registration Systems, Inc. (Mortgagee)
together with the Borrower(s), the "Parties").

### WITNESSETH
WHEREAS, Borrower has requested and Lender has agreed, subject to the
following terms and conditions, to a loan modification as follows:
NOW THEREFORE, in consideration of the covenants hereinafter set forth
and for other good and valuable consideration, the receipt and
sufficiency of which are hereby acknowledged by the Parties, it is agreed
as follows (notwithstanding anything to the contrary in the Note and
Security Instrument dated 08/06/2008.)
1.   BALANCE. As of February 16, 2011, the amount payable under the Note
and Security Instrument (the "Unpaid Principal Balance") is U.S.
$ 191,304.00.
2.   EXTENSION. This Agreement hereby modifies the following terms of the
Note and Security Instrument described herein above as follows:
A. The current contractual due date has been extended from 04-01-10
to 04/01/2011. The first modified contractual due date is on
04/01/2011.
B. The maturity date has been extended from 02-40 (month/year) to
03/01/2041.
C. The amount of interest to be included (capitalized) will be U.S.
$ 9,804.36.
The amount of the Escrow Advance to be capitalized will be U.S. $3,493.60.
The amount of Recoverable Expenses* to be capitalized will be
U.S. $3,407.22.
The modified Unpaid Principal Balance is U.S. $ 208,009.18.
* Recoverable Expenses may include, but are not limited to: Title,
Attorney fees/costs, BPO/Appraisal, and/or Property Preservation/
Property Inspections

D. The Borrower(s) promises to pay the Unpaid Principal Balance plus
interest, to the order of the Lender. Interest will be charged on the
Unpaid Principal Balance of U.S. $ 208,009.18. The Borrower(s) promises
to make monthly payments of principal and interest of U.S. $ 1,132.58,
at a yearly rate of 5.125%, not including any escrow deposit, if
applicable. If on the maturity date the Borrower(s) still owes an amount
under the Note and Security Instrument, as amended by this Agreement,
Borrower(s) will pay this amount in full on the maturity date.
LM521/XTC/1

Together we'll go far

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.

Case: 13-45382   Doc# 29-3   Filed: 08/17/17   Entered: 08/17/17 15:34:42   Page 21
of 30


3. NOTE AND SECURITY INSTRUMENT. Nothing in this Agreement shall be understood or construed to be a satisfaction or release, in whole or in part of the Borrower's obligations under the Note or Security Instrument. Further, except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and shall comply with, all of the terms and provisions thereof, as amended by this Agreement.

4. The undersigned Borrower(s) acknowledge receipt and acceptance of the Loan Modification Settlement Statement. Borrower(s) agree with the information disclosed in and understand that I/we am/are responsible for payment of any outstanding balances outlined in the Loan Modification Settlement.

5. The undersigned Borrower(s) acknowledge receipt and acceptance of the Borrower Acknowledgements, Agreements, and Disclosures Document (BAAD).

6. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Truth in Lending statement.

7. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Special Flood Hazard Area (SFHA).

8. That (he/she/they) (is/are) the Borrower(s) on the above-referenced Mortgage Loan serviced by Wells Fargo Bank, N A.

That (he/she/they) have experienced a financial hardship or change in financial circumstances since the origination of (his/her/their) Mortgage Loan.

That (he/she/they) did not intentionally or purposefully default on the Mortgage Loan in order to obtain a loan modification.

LM521/XTC/2

Together we'll go far



CORRECTION AGREEMENT. The undersigned borrower(s), for and in consideration of the approval, closing and funding of this Modification, hereby grants Wells Fargo Bank, N A, as lender, limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Modification Agreement required to be signed. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf. This provision may not be used to modify the interest rate, modify the term, modify the outstanding principal balance or modify the undersigned's monthly principal and interest payments as modified by this agreement. Any of these specified changes must be executed directly by the undersigned. This limited power of attorney shall automatically terminate in 120 days from the closing date of the undersigned's Modification. _____ _____ (Borrower(s) initial)

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as the date first above written.

By signing this Agreement I hereby consent to being contacted concerning this loan at any cellular or mobile telephone number I may have. This includes text messages and telephone calls including the use of automated dialing systems to contact my cellular or mobile telephone. You will not be billed by your cellular or mobile carrier for any text messages you may receive from Wells Fargo, however, any calls we place to your cellular or mobile phone will incur normal airtime charges assessed by your mobile carrier.

Dated as of this 24 day of February , 20 11 .

_____          _____
Robert A Rojas                        Celia Rojas
Signature                             Signature

_Sarah Witte_ 4|5|11          **Sarah Witte**
_____  **Vice President Loan Documentation**
Wells Fargo Bank, N A


Mortgage Electronic Registration Systems, Inc.

Name: _____

Its: _____
LM527/XTC/3

Together we'll go far

**WELLS FARGO** | **HOME MORTGAGE**

MODIFICATION AGREEMENT
LOAN NUMBER ███████████
PROPERTY ADDRESS 475 Christine Drive
San Pablo CA 94806
Borrower's Representations

THIS LOAN MODIFICATION AGREEMENT made on June 19, 2012, by and between Robert A Rojas and Celia Rojas (the "Borrower(s)") and Wells Fargo Bank, N. A. (the "Lender") amends and supplements that certain Note and Mortgage or Deed of Trust dated 08/06/2008.

WHEREAS, Borrower has requested, and Lender has agreed, to modify the terms of the Note and Security Instrument as follows:

1. Borrower filed for relief under Chapter 07 of the United States Bankruptcy Code on 07/08/2011.
2. Borrower received a discharge pursuant to the United States Bankruptcy Code on 10/17/2011.
3. Prior to filing for relief under the United States Bankruptcy Code, Borrower agreed to pay for the Property over time, pursuant to the Note and Security Instrument between Lender and Borrower. Such agreement granted Lender a valid security interest and an enforceable lien on the Property.
4. Borrower, during the course of the bankruptcy case referenced above, never reaffirmed the debt from the Borrower to Lender.
5. Borrower desires to retain the Property, and acknowledges that Lender's security interest and lien are still valid and enforceable.
6. Borrower acknowledges and understands that he/she is not obligated to enter into this Agreement.
7. Borrower acknowledges that he/she is entering into this Agreement at Borrower's request, voluntarily and with no coercion or pressure from Lender, for the sole purpose of retaining the Property and that Borrower has no personal obligation to repay the debt secured by the Property which was discharged in bankruptcy.
   _____ (AFTER READING THIS PARAGRAPH, BORROWER MUST INITIAL HERE.)
8. Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien under the appropriate circumstances.
9. Borrower acknowledges that, absent this Agreement, Lender is entitled to enforce its security interest in the Property, and to foreclose and dispose of the Property in accordance with the Security Instrument and applicable state law.

Lender's Representations

10. Lender acknowledges (1) that Borrower has received a discharge in bankruptcy, (2) that the debt from the Borrower to Lender has been discharged and (3) that Borrower has no personal obligation to pay the debt secured by the Property.
11. Lender, despite such discharge, retains a valid and enforceable security interest in and lien on the Property.
12. Absent this Agreement, Lender is entitled to enforce its security interest in the Property.

BK175/JBY/1

Together we'll go far

**WELLS HOME**
**FARGO MORTGAGE**

Wells Fargo Home Mortgage
MAC WO152-O1O
220 Wildwood Parkway
Birmingham, AL 35209

Tel: 877 913 3376 Toll Free

Page 2 - Modification Agreement ███████

13. Borrower has requested that Lender allow him/her to retain the Property and Lender has agreed to such request, in exchange for Borrower's payment to Lender of the debt secured by the Property in the manner specified herein.

THEREFORE, in consideration of the mutual representations and the other consideration expressed herein, Borrower and Lender jointly agree as follows:

1. Borrower desires to retain, and Lender agrees to allow Borrower to retain, the Property under the conditions in this Agreement.
2. Borrower and Lender agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of the Borrower's default of its obligations thereunder.
3. Borrower and Lender acknowledge and agree that this Modification Agreement does not affect the discharge of the Borrower's personal liability on the debt.
4. Borrower acknowledges that the Lender has incurred, paid, or otherwise advanced taxes, insurance premiums, and other expenses necessary to protect or enforce its security interest in the Note and Security Instrument, and that such costs and expenses, together with accrued interest, in the total amount of $17,540.24 have been added to the indebtedness under the terms of the Note and Security Instrument, and that as of 08/01/2012, the amount, including the amounts which have been added to the indebtedness, payable under the Note and Security Instrument (the "Unpaid Principal Balance") is U.S. $224,317.90.
5. Borrower shall pay the Modified Unpaid Principal Balance, plus interest, to the order of the Lender. Interest will be charged on the unpaid principal balance at the yearly rate of 4.250%, beginning 07/01/2012. The Borrower shall make monthly payments of principal and interest of U.S. $1,103.51 (not including escrow deposit), beginning on 08/01/2012 and continuing thereafter on the same day of each succeeding month until Lender has received all principal and interest payable under the Note and Security Instrument. If on 07/01/2042 (the "Modified Maturity Date"), there are still amounts due and owing under the Note and Security Instrument, as amended by this Modification, the Borrower will pay these amounts on the Modified Maturity Date. The Borrower will make such payments at Lender or at such other place as the Lender may require.
6. Notwithstanding any monthly payments hereunder, Borrower understands that (1) Lender's sole recourse is the enforcement of its security interest in the Property and any action which may exist in relation to the Property itself and that (2) nothing in this Agreement revives or purports to revive any debt, or create any personal liability or obligation for a debt, that was discharged in bankruptcy. _____ (BORROWER MUST INITIAL HERE.)

BK175/JBY/2

Together we'll go far

Case: 13-45382   Doc# 29-3   Filed: 08/17/17   Entered: 08/17/17 13:34:42   Page 25 of 30

**WELLS FARGO | HOME MORTGAGE**

Wells Fargo Home Mortgage
MAC W0152-010
220 Wildwood Parkway
Birmingham, AL 35209

Tel: 877 913 3376 Toll Free

Page 3 - Modification Agreement ▉▉▉▉▉▉▉

7. Notwithstanding any other covenant, agreement or provision of the Note and Security Instrument, as defined in the Modification Agreement, the Borrower(s) agree as follows:

   If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate possession of the Property secured by the Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Modification Agreement.
   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must cure this default pursuant to the terms of the Security Instrument. If Borrower fails to cure the default prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower. Lender's rights and remedies extend only to the Property, and any action related to the Property itself and not to recovery of any amount owed to Lender under the Note which has been discharged in bankruptcy.

8. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, included without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that are required by the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the effective date of this Modification Agreement:
   (a) All terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and
   (b) All terms and provisions of any adjustable rate rider or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.
   (c) All terms and provisions of the Note and Security Instrument that provide that Borrower is personally liable to pay the debt secured by the Property.

9. If Borrower fails to pay Lender the amount due and owing or to pay any monthly payment on the dates above, Borrower shall surrender the Property to Lender. If Borrower fails or refuses to surrender the Property to Lender, Lender may exercise any and all remedies to recover the Property as may be available to Lender pursuant to its security interest and lien and applicable law. Together we'll go far

BK176/JBY/3



Page 4 - Modification Agreement

remedies may include the recovery of reasonable attorney's fees actually incurred, plus legal expenses and expenses for entering on the Property to make repairs in any foreclosure action filed to enforce the Lender lien. Lender's rights and remedies extend only to the Property, and any action related to the Property itself and not to recovery of any amount owed to Lender under the Note which has been discharged in bankruptcy.

10. This Agreement shall be construed pursuant to the laws of the state in which the property is located.

11. NOTHING CONTAINED HEREIN SHALL BE CONSTRUED TO BE A WAIVER OF THE BORROWER'S DISCHARGE, AN ATTEMPT TO COLLECT AGAINST THE BORROWER PERSONALLY, OR AN ATTEMPT TO REVIVE PERSONAL LIABILITY.

12. Nothing in this agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged and the Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

13. If included, the undersigned borrower(s) acknowledges receipt and acceptance of the Notice of Special Flood Hazard disclosure.

CORRECTION AGREEMENT. The undersigned borrower(s), for and in consideration of the approval, closing and funding of this Modification, hereby grants Wells Fargo Bank, N. A. , as lender, limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Modification Agreement required to be signed. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf. This provision may not be used to modify the interest rate, modify the term, modify the outstanding principal balance or modify the undersigned's monthly principal and interest payments as modified by this agreement. Any of these specified changes must be executed directly by the undersigned. This limited power of attorney shall automatically terminate in 120 days from the closing date of the undersigned's Modification. _____ (Borrower Initial)

_____     July 9, 12
Robert A Rojas                        /Date

_____     _____
Celia Rojas                           /Date

_____     7-20-12     **Elizabete A. Gizaw**
Wells Fargo Bank, N. A. , Officer/Date          Vice President Loan Documentation

BK176/JBY/4

Together we'll go far

Debtor name: **ROBERT ALEXI ROJAS**

Bk Filing Date: **9/24/2013**

First PP PmtDueDate/Amt: **10/1/2013 / $1409.72**

| Post Petition Due Date | Classified Payment Amount Due | Date Funds Received | Transaction Amount Received | Date Funds Applied | Classified Total Amount Applied | Debtor Suspense Balance |
|---|---|---|---|---|---|---|
| | | | | | | $0.00 |
| | | 10/4/2013 | $1,401.79 | | | $1,401.79 |
| | | 11/15/2013 | $1,401.79 | | | $2,803.58 |
| 10/1/2013 | $1,409.72 | | | 11/18/2013 | $1,409.72 | $1,393.86 |
| | | 12/13/2013 | $1,401.79 | | | $2,795.65 |
| 11/1/2013 | $1,409.72 | | | 12/23/2013 | $1,409.72 | $1,385.93 |
| | | 1/10/2014 | $1,401.79 | | | $2,787.72 |
| 12/1/2013 | $1,409.72 | | | 1/13/2014 | $1,409.72 | $1,378.00 |
| | | 2/7/2014 | $1,410.00 | | | $2,788.00 |
| 1/1/2014 | $1,409.72 | | | 2/10/2014 | $1,409.72 | $1,378.28 |
| | | 3/7/2014 | $1,401.79 | | | $2,780.07 |
| 2/1/2014 | $1,409.72 | | | 3/10/2014 | $1,409.72 | $1,370.35 |
| | | 3/21/2014 | $24.00 | | | $1,394.35 |
| | | 4/4/2014 | $1,402.00 | | | $2,796.35 |
| 3/1/2014 | $1,409.72 | | | 4/7/2014 | $1,409.72 | $1,386.63 |
| | | 5/15/2014 | $1,410.00 | | | $2,796.63 |
| 4/1/2014 | $1,409.72 | | | 5/16/2014 | $1,409.72 | $1,386.91 |
| | | 6/27/2014 | $1,410.00 | | | $2,796.91 |
| 5/1/2014 | $1,409.72 | | | 6/30/2014 | $1,409.72 | $1,387.19 |
| | | 7/14/2014 | $1,409.72 | | | $2,796.91 |
| 6/1/2014 | $1,409.72 | | | 7/15/2014 | $1,409.72 | $1,387.19 |
| | | 8/8/2014 | $1,432.25 | | | $2,819.44 |
| 7/1/2014 | $1,409.72 | | | 8/11/2014 | $1,409.72 | $1,409.72 |
| 8/1/2014 | $1,409.72 | | | 8/12/2014 | $1,409.72 | $0.00 |
| | | 9/19/2014 | $1,409.72 | | | $1,409.72 |
| 9/1/2014 | $1,409.72 | | | 9/22/2014 | $1,409.72 | $0.00 |
| | | 10/13/2014 | $145.60 | | | $145.60 |
| | | 10/31/2014 | $1,409.72 | | | $1,555.32 |
| 10/1/2014 | $1,409.72 | | | 11/3/2014 | $1,409.72 | $145.60 |
| | | 12/12/2014 | $1,409.72 | | | $1,555.32 |
| 11/1/2014 | $1,409.72 | | | 12/15/2014 | $1,409.72 | $145.60 |
| | | 1/12/2015 | $1,432.00 | | | $1,577.60 |
| 12/1/2014 | $1,431.38 | | | 1/13/2015 | $1,431.38 | $146.22 |
| | | 2/6/2015 | $1,431.38 | | | $1,577.60 |
| 1/1/2015 | $1,431.38 | | | 2/9/2015 | $1,431.38 | $146.22 |
| | | 3/11/2015 | $1,432.00 | | | $1,578.22 |

Case Number: **1345382**

Case: 13-45382    Doc# 29-3    Filed: 08/17/17    Entered: 08/17/17 15:34:42    Page 28 of 30

| Post Petition Due Date | Classified Payment Amount Due | Date Funds Received | Transaction Amount Received | Date Funds Applied | Classified Total Amount Applied | Debtor Suspense Balance |
|---|---|---|---|---|---|---|
| 2/1/2015 | $1,431.38 | | | 3/12/2015 | $1,431.38 | $146.84 |
| | | 4/17/2015 | $1,431.38 | | | $1,578.22 |
| 3/1/2015 | $1,431.38 | | | 4/21/2015 | $1,431.38 | $146.84 |
| | | 5/15/2015 | $1,433.00 | | | $1,579.84 |
| 4/1/2015 | $1,431.38 | | | 5/27/2015 | $1,431.38 | $148.46 |
| | | 6/26/2015 | $1,435.00 | | | $1,583.46 |
| 5/1/2015 | $1,431.38 | | | 6/29/2015 | $1,431.38 | $152.08 |
| | | 7/10/2015 | $1,435.00 | | | $1,587.08 |
| 6/1/2015 | $1,431.38 | | | 7/13/2015 | $1,431.38 | $155.70 |
| | | 9/4/2015 | $1,435.00 | | | $1,590.70 |
| 7/1/2015 | $1,431.38 | | | 9/8/2015 | $1,431.38 | $159.32 |
| | | 10/16/2015 | $1,440.00 | | | $1,599.32 |
| 8/1/2015 | $1,431.38 | | | 10/19/2015 | $1,431.38 | $167.94 |
| | | 11/13/2015 | $1,432.00 | | | $1,599.94 |
| 9/1/2015 | $1,431.38 | | | 11/16/2015 | $1,431.38 | $168.56 |
| | | 11/27/2015 | $1,434.00 | | | $1,602.56 |
| 10/1/2015 | $1,431.38 | | | 11/30/2015 | $1,431.38 | $171.18 |
| | | 12/28/2015 | $1,495.00 | | | $1,666.18 |
| 11/1/2015 | $1,431.38 | | | 12/29/2015 | $1,431.38 | $234.80 |
| | | 1/22/2016 | $1,495.00 | | | $1,729.80 |
| 12/1/2015 | $1,493.36 | | | 1/25/2016 | $1,493.36 | $236.44 |
| | | 2/19/2016 | $1,495.00 | | | $1,731.44 |
| 1/1/2016 | $1,493.36 | | | 2/22/2016 | $1,493.36 | $238.08 |
| | | 3/18/2016 | $1,431.38 | | | $1,669.46 |
| 2/1/2016 | $1,493.36 | | | 3/22/2016 | $1,493.36 | $176.10 |
| | | 4/18/2016 | $1,495.00 | | | $1,671.10 |
| 3/1/2016 | $1,493.36 | | | 4/19/2016 | $1,493.36 | $177.74 |
| | | 5/31/2016 | $1,495.00 | | | $1,672.74 |
| 4/1/2016 | $1,493.36 | | | 6/1/2016 | $1,493.36 | $179.38 |
| | | 6/24/2016 | $1,580.00 | | | $1,759.38 |
| 5/1/2016 | $1,493.36 | | | 6/27/2016 | $1,493.36 | $266.02 |
| | | 7/22/2016 | $1,580.00 | | | $1,846.02 |
| 6/1/2016 | $1,579.79 | | | 7/25/2016 | $1,579.79 | $266.23 |
| | | 8/23/2016 | $1,580.00 | | | $1,846.23 |
| 7/1/2016 | $1,579.79 | | | 8/24/2016 | $1,579.79 | $266.44 |
| | | 9/30/2016 | $1,580.00 | | | $1,846.44 |

| Post Petition Due Date | Classified Payment Amount Due | Date Funds Received | Transaction Amount Received | Date Funds Applied | Classified Total Amount Applied | Debtor Suspense Balance |
|---|---|---|---|---|---|---|
| 8/1/2016 | $1,579.79 | | | 10/3/2016 | $1,579.79 | $266.65 |
| | | 10/28/2016 | $1,580.00 | | | $1,846.65 |
| 9/1/2016 | $1,579.79 | | | 10/31/2016 | $1,579.79 | $266.86 |
| | | 11/25/2016 | $1,580.00 | | | $1,846.86 |
| 10/1/2016 | $1,579.79 | | | 11/28/2016 | $1,579.79 | $267.07 |
| | | 1/6/2017 | $1,580.00 | | | $1,847.07 |
| 11/1/2016 | $1,579.79 | | | 1/9/2017 | $1,579.79 | $267.28 |
| | | 2/3/2017 | $1,580.00 | | | $1,847.28 |
| 12/1/2016 | $1,579.79 | | | 2/6/2017 | $1,579.79 | $267.49 |
| | | 3/3/2017 | $1,580.00 | | | $1,847.49 |
| 1/1/2017 | $1,579.79 | | | 3/6/2017 | $1,579.79 | $267.70 |
| | | 4/14/2017 | $1,580.00 | | | $1,847.70 |
| 2/1/2017 | $1,579.79 | | | 4/17/2017 | $1,579.79 | $267.91 |
| | | 5/9/2017 | ($145.60) | | | $122.31 |
| | | 5/12/2017 | $1,580.00 | | | $1,702.31 |
| 3/1/2017 | $1,579.79 | | | 5/15/2017 | $1,579.79 | $122.52 |
| | | 6/23/2017 | $1,530.00 | | | $1,652.52 |
| 4/1/2017 | $1,529.48 | | | 6/26/2017 | $1,529.48 | $123.04 |
| | | 7/31/2017 | $1,580.00 | | | $1,703.04 |
| 5/1/2017 | $1,529.48 | | | 8/1/2017 | $1,529.48 | $173.56 |
| 6/1/2017 | $1,529.48 | | | | | |
| 7/1/2017 | $1,529.48 | | | | | |
| 8/1/2017 | $1,529.48 | | | | | |
| **Totals** | **$69,318.10** | **N/A** | **$64,903.22** | **N/A** | **$64,729.66** | **$173.56** |

Case Number: 1345382        Page 3 of 3